UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON GRAVES, et al., | ) | CASE NO. 4:10CV2821 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| MAHONING COUNTY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court are motions to dismiss filed by defendant Mahoning County ("the County") (Doc. No. 140 ["County MTD"]) and defendants Austintown Township, Beaver Township, Boardman Township, Goshen Township, Green Township, Jackson Township, Milton Township and Springfield Township (Doc. No. 142 ["Townships MTD"]). Plaintiffs filed a combined brief in opposition to both motions (Doc. No. 145 ["Pls. Opp'n"]) and defendants filed separate replies (Doc. No. 148 ["County Reply"]; Doc. No. 149 ["Townships Reply"]).

On November 17, 2014, plaintiffs filed a notice of supplemental authority. (Doc. No. 150.) The Court directed plaintiffs to file a supplement to their opposition brief, specifying how the new authority applies to their arguments in opposition to the motions to dismiss. Plaintiffs filed their supplemental brief (Doc. No. 152 ["Pls. Suppl."]) and defendants filed their supplemental replies (Doc. No. 153 ["County Suppl."]; Doc. No. 154 ["Townships Suppl."]).

For the reasons discussed below, both motions to dismiss are **GRANTED**.

## I. BACKGROUND

This case has a rather extensive history. The case was filed on December 14, 2010 and was originally assigned to another judicial officer, who recused in April 2011. At that time, the case was reassigned to the undersigned. Although it took some time due to plaintiff's two unsuccessful attempts to amend the complaint, defendants filed motions to dismiss.

On November 28, 2011, the Court granted in part and denied in part the motions to dismiss. The Court dismissed with prejudice the claims of plaintiffs Shannon Graves and Amber Sexton, concluding that they were barred both by the teachings of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) and by the doctrine of *res judicata*. The Court stayed the case with respect to the remaining plaintiffs, pending resolution of various state proceedings. As a result of the stay, plaintiff's motions for preliminary injunction and for class certification were denied without prejudice. (*See* Doc. No. 103.) Cross-appeals were taken.

On August 15, 2013, the Sixth Circuit Court of Appeals reversed the dismissal of the claims of Graves and Sexton, rejecting both grounds relied upon by this Court,[1] and remanded for further proceedings, noting that it need not address the propriety of any stay of the case since, during the pendency of the appeals, all state cases had been resolved, rendering the entire matter ripe to proceed in federal court. (*See* Doc. No. 112 ["Opinion"]; Doc. No. 114.) The Sixth Circuit did not address the merits of plaintiffs' underlying claims.

Following remand, the Case Management Conference ("CMC") was convened on November 19, 2013. Therein, it was agreed by counsel and the Court that plaintiffs should file an

---

[1] The Sixth Circuit ruled specifically that "a finding that Graves's and Sexton's arrests violated the Fourth Amendment would not necessarily invalidate their convictions[,] [and, therefore,] the *Heck* doctrine does not bar Graves and Sexton from bringing their claims." (Opinion at 2260.) The Court of Appeals further concluded that neither claim preclusion nor issue preclusion, the two aspects of *res judicata*, applied to either Graves's or Sexton's claims. (*Id*. at 2261.)

amended complaint; however, when that amended complaint was filed, it exceeded the scope of the permission to amend that had been granted during the CMC and it was, therefore, later stricken upon defendants' motion. (*See* Doc. No. 136.) With leave, plaintiffs filed the amended complaint that is now operative in the case. (Doc. No. 139 ["Compl."].) Defendants filed the instant motions to dismiss.

## II. DISCUSSION

### A. Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted

factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

## B. The Parties' Positions

The two counts of the complaint are brought by nine individual plaintiffs, on behalf of themselves and others similarly situated,[2] against Mahoning County and nine townships within the County allegedly "in privity" with the County (Austintown, Beaver, Boardman, Goshen, Green, Jackson, Milton, Smith, and Springfield). (Compl. ¶ 11.)[3] There are no individual defendants in this case, although the complaint contains allegations regarding the actions of township police officers and deputy clerks of court.[4]

Since the sufficiency of the allegations in the complaint are of tantamount importance on a motion to dismiss, the Court sets out the relevant allegations in some detail below. Plaintiffs allege:

> 1. Plaintiffs are individuals whom Defendants . . . have from time to time arrested in violation of their Due Process rights under the Fourth Amendment of the United States Constitution and their civil rights under 42 U.S.C. § 1983 . . . . For years, Defendants . . . have improperly issued felony and misdemeanor arrest warrants based on putative affidavits that do not exist and have improperly allowed court clerks, who lack capacity to determine probable

---

[2] A class has not yet been certified. The Court notes, however, that the complaint purports a right to certify a class of persons arrested during a period beginning on December 14, 2006. (Compl. ¶ 40.) The complaint was filed on December 14, 2010. There is a two-year statute of limitations to bring a claim under § 1983. *Holson v. Good*, 579 F. App'x 363, 366 (6th Cir. 2014) ("the statute of limitations for a § 1983 claim is two years and runs from 'when the plaintiff knows or has reason to know of the injury which is the basis' of the claim.") (quoting *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 856 (6th Cir. 2003)). Therefore, were a class to be certified, the earliest date it could encompass would be December 14, 2008.

[3] Although neither motion has raised this fact, none of the named plaintiffs were alleged to have ever been arrested by Goshen Township, Green Township, Jackson Township, Smith Township, or Springfield Township. Plaintiffs' opposition brief even acknowledges this fact. (*See* Pls. Opp'n at 2980.) The lack of a case or controversy between plaintiffs and these defendants is reason alone to dismiss these five townships.

[4] The docket actually would suggest that there are more plaintiffs and defendants than there are. These "extras" are remnants of the improperly filed versions of the complaint.

cause, to issue felony and misdemeanor arrest warrants. Defendants' blatantly unconstitutional practices continue unabated and Plaintiffs, together with all others [sic] individuals similarly situated, face a clear and continued threat of Defendants' continued and inexorable trampling of their rights. Plaintiffs seek declaratory and injunctive class relief and damages.

\*\*\*

10. Each Mahoning County Township has a Township police department and police officers who file criminal charges in the County Courts. Some townships like Canfield and Berlin contract with the Mahoning County sheriff's office for police services.

11. The County and Mahoning County Townships are in privity. For example, Mahoning County Prosecutor Paul Gains is the legal advisor to each of the townships . . . and his office has promulgated, implemented, and presides over the present policy and custom of Township police officers. At times, County sheriff deputies or County Prosecutors file criminal complaints consisting only of the complainant's conclusion and further the policy and custom of permitting deputy Mahoning County court clerks ("Deputy Clerks") to issue arrest warrants without any determination of probable cause.

\*\*\*

16. There is an established custom by Mahoning County Township police officers, and at times by County sheriff deputies or County Prosecutors, of filing criminal complaints consisting only of the officer's conclusion that the accused committed the offense. These complaints state only the following: "On or about [date] in Mahoning county [defendant] at [location] did engage in [offense] in violation of [statute]."

17. The custom of filing conclusory complaints to support arrest warrants is patently unconstitutional. No competent police officer believes that these conclusory complaints permit an independent determination of probable cause to issue an arrest warrant.

\*\*\*

20. Upon information and belief, probable cause is decided by magistrates or judges in every county in Ohio, except in Mahoning County, where legally untrained Deputy Clerks issue felony and misdemeanor warrants as part of their clerical duties.

21. Deputy Clerks in Mahoning County issue felony and misdemeanor arrest warrants as a clerical or ministerial function, *i.e.*, they sign warrants upon

requests, rather than as a judicial function, *i.e.*, analyzing a complaint to determine if probable cause exists. Deputy Clerks process all arrest warrants in Mahoning County even though sixteen judges and eighteen magistrates are available, capable and trained to make this determination.

      22.    Deputy Clerks have not received any specialized training, monitoring, or supervision in determining probable cause to issue warrants. Deputy Clerks do not review the criminal complaint before signing the arrest warrants. Deputy Clerks rely on the officer's conclusion to arrest the accused and have never refused to sign an arrest warrant.

      23.    Every warrant issued by a deputy clerk is without probable cause in violation of the Fourth Amendment provision that, "No Warrants shall issue, but upon probable cause."

(Compl. [Doc. No. 139].)

The gravamen of plaintiffs' complaint is two-fold: (1) that deputy clerks are incapable of making a probable cause determination; and (2) that the complaints submitted by officers to the deputy clerks are bare bones complaints that do not pass constitutional muster. Significantly, plaintiffs do not allege that the arrests were made without probable cause.

The County argues in its motion to dismiss that the procedure for the issuance of arrest warrants by deputy clerks based upon complaints is a statutory procedure authorized by the State of Ohio. (County MTD at 2879-80.)[5] The County further argues that the complaints include all the elements of the alleged crime and are, therefore, sufficient to establish probable cause, meeting "the spirit and intent of [Ohio] Crim. Rules 3 and 4." (*Id.* at 2879.) In the alternative, the County argues that plaintiffs have failed to establish a *Monell* claim against it because, when the deputy clerks issue arrest warrants, they are acting pursuant to statutes and criminal rules as agents of the State of Ohio, not of the County. (*Id.* at 2881-82, citing *Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993).) The County asserts that the fact the prosecuting

---

[5] All page number references are to the page identification number generated by the Court's electronic docketing system.

6

attorney may provide legal advice does not change the analysis and that this very issue has already been decided in *5455 Clarkins Drive v. Poole*, No. 1:09-cv-01841, 2009 WL 4281461, at *3 (N.D. Ohio Nov. 25, 2009) (prosecuting attorney's office acted as a legal advisor, not a policymaker or decisionmaker). Finally, the County argues that plaintiffs' complaint only alleges that there is a custom and practice of arresting people on facially invalid warrants based on conclusory complaints, but does not allege that there is a custom and practice of arresting without probable cause, which is necessary for a Fourth Amendment violation. (County MTD at 2884.) In its reply brief, the County also points out that it has never arrested any of the plaintiffs; therefore, even if the various townships have policies that result in unconstitutional arrests, plaintiffs cannot "attach that policy onto Mahoning County itself [because] Mahoning County does not make policy decisions for Townships." (County Reply at 3006.)

The Township Defendants raise generally the same arguments, and add an additional argument that state courts have already resolved at least some of the plaintiffs' Fourth Amendment challenges and they are, therefore, barred by *res judicata*. This argument does not appear to be directed at the claims of plaintiffs Graves and/or Sexton. Of course, the Sixth Circuit has declared that no Fourth Amendment claims under § 1983 were litigated by either of these plaintiffs in state court because "a criminal defense and a § 1983 claim are not the 'same' under Ohio claim-preclusion law[]" and "issue preclusion does not apply because it is undisputed that prior to pleading guilty, neither Graves nor Sexton asserted their Fourth Amendment claims, and therefore these claims were not actually litigated in the criminal proceedings." (Opinion at 2261.)

**C.     Analysis**

To the extent plaintiffs' Fourth Amendment claims are based on the fact that arrest warrants are issued by clerks, not judicial officers, the claims must fail under both federal and state case law. In *Gooden v. City of Brunswick*, No. 1:12CV2918, 2014 WL 1379528, at *9 (N.D. Ohio Apr. 8, 2014), the court rejected plaintiff's argument that an arrest warrant was facially invalid "because it was approved, reviewed, and signed by a Medina Municipal Court deputy clerk, rather than a judge or magistrate." The court noted that, in "[r]elying on *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S. Ct. 2119, 32 L. Ed. 2d 783 (1972), the Sixth Circuit has made clear that '[s]tate law determines what person is allowed to approve what warrant.'" *Id.* (quoting *United States v. Master*, 614 F.3d 236, 240 (6th Cir. 2010)). Rule 4(a)(1)(A) of the Ohio Rules of Criminal Procedure provides that a clerk of court may issue an arrest warrant. *See also* Ohio Rev. Code § 2935.08 (authorizing issuance of a warrant by a court clerk).[6] The Ohio Supreme Court has also held that issuance of an arrest warrant by a clerk of court, a nonjudicial officer, does not violate the Fourth Amendment. *State v. Fairbanks*, 289 N.E.2d 352 (Ohio 1972) (Syllabus ¶ 3).

Plaintiffs' complaint also alleges that their arrest warrants were invalid because they were issued based upon bare bones, conclusory complaints allegedly unsupported by affidavits, a fact which the Court takes as true for purposes of the motions to dismiss. But, "an arrest made pursuant to a facially invalid arrest warrant does not necessarily violate the Fourth Amendment, as long as probable cause to arrest exists." *Webb v. Greene Cnty. Sheriff's Office*, 494 F. Supp. 2d 779, 795 (S.D. Ohio 2007) (citing *Whiteley, supra*, and *Sampson v. City of Xenia*, 108 F. Supp. 2d 821 (S.D. Ohio 1999)); *see also United States v. Fachini*, 466 F.2d 53, 57

---

[6] Plaintiffs have not challenged the constitutionality of any of Ohio's statutes or criminal rules.

(6th Cir. 1972) ("a showing of probable cause that a felony has been committed has long been deemed sufficient to justify arrest, even if the arrest warrant is invalid[]") (citing cases). This is so even if the arrest warrant is issued by an untrained clerk.

In order to demonstrate a Fourth Amendment violation, plaintiffs are required to show that law enforcement arrested them without probable cause based upon all facts and circumstances within the *officers' knowledge* at the time of the arrest. *Webb*, 494 F. Supp. 2d at 794-95. The violation does not occur simply because the arrest warrant is invalid or is issued by an untrained clerk. *Id.* at 794 (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999): "The law has been clearly established since at least the Supreme Court's decision in *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543 (1925), that probable cause determinations involve an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.*").

Plaintiffs are essentially asking this Court to apply a kind of "strict liability" standard where, if the complaints are bare bones (*i.e.*, the type of complaints that have been uniformly found lacking by courts[7]) and/or the warrants invalid, then the arrest must have been without probable cause. Plaintiffs supply no authority for this proposition and, in fact, courts have found otherwise. *See Webb*, 494 F. Supp. 2d at 795 ("While the Plaintiffs have offered evidence suggesting that the Greene County Sheriff's Department, and by extension Greene County, had a policy or practice of swearing to Complaint and Affidavits insufficient to support

---

[7] Court after court, and importantly the Supreme Court, has made clear that these kinds of bare bones criminal complaints do not pass constitutional muster because they "do[]not provide any basis for the . . . determination . . . that probable cause existed." *Giordenello*, 357 U.S. at 487; *Whiteley*, 401 U.S. at 564 (the issuing officer must be supplied with "sufficient information to support an independent judgment that probable cause exists for the warrant"); *see also State v. Hoffman*, No. 2013-0688, 2014 WL 5648448, at *12 (Ohio Nov. 4, 2014) (citing *Overton v. Ohio*, 534 U.S. 982, 984-86, 122 S. Ct. 389, 151 L. Ed. 2d 317 (2001), denying certiorari but not without "sanction[ing] criminal complaints that merely recited the statutory elements as valid support for arrest warrants").

a valid arrest warrant, they have offered nothing to suggest that there existed a policy or practice of arresting people without probable cause.").

Plaintiffs' failure to allege an underlying constitutional violation (*i.e.*, that their arrests were without probable cause) is fatal to their claims against all defendants – governmental entities, who "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation . . . is established, the [governmental entity] cannot be held liable under § 1983.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)).

Even if the Court construes plaintiffs' complaint as alleging that warrants for their arrests were issued without a probable cause determination by the relevant deputy clerks (which goes beyond the allegations),[8] plaintiffs' complaint still cannot withstand dismissal with respect to that claim because it fails to allege that any such practice results from a policy or custom of any of *these* defendants, all of whom are governmental entities that can be liable only for their own policies and customs. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)

---

[8] The allegations of the complaint are quite nuanced and, when read in context, even allegations wherein one might try to locate a claim of "no probable cause determination" are saying not that there actually *was* no probable cause to arrest plaintiffs, but that there *could not have been* simply because (1) the complaints are "bare bones," and (2) the deputy clerks are not qualified or capable of making probable cause determinations. (*See, e.g.,* Compl. ¶ 17 ("The custom of filing conclusory complaints to support arrest warrants is patently unconstitutional. No competent police officer believes that these conclusory complaints permit an independent determination of probable cause to issue an arrest warrant."); ¶ 22 ("Deputy Clerks have not received any specialized training, monitoring, or supervision in determining probable cause to issue warrants. . . ."); ¶ 23 ("Every warrant issued by a deputy clerk is without probable cause . . . ."); ¶ 24 ("Deputy Clerks are incapable of determining probable cause to issue misdemeanor and felony arrest warrants."); ¶ 38 ("Defendants' practice of arresting a person based on a criminal complaint that is insufficient on its face to permit a determination of probable cause, or based on an arrest warrant . . . signed by a Deputy Clerk who lacks the capacity to determine probable cause is a violation of that person's rights under the Constitution and other federal law."); ¶ 50(b) ("Deputy Clerks . . . issue arrest warrants . . . even though they lack the capacity to determine probable cause and even though judicial officers are readily available. . . ."); ¶ 50(c) ("Defendants . . . have abandoned the constitutionally required probable cause determination and supplanted it with an expedient rubber stamp procedure . . . ."); ¶ 56 ("There is no reasonable basis for any reasonable person to believe that these complaints establish probable cause.")). But these challenges have already been rejected, as explained herein. It is not the issuance of a facially invalid warrant that results in the Fourth Amendment violation, but the arrest of a suspect without probable cause.

(plaintiffs "must 'identify the policy, connect the policy to the [governmental entity] itself and show that the particular injury was incurred because of the execution of that policy.'") (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)) (further citation omitted); *see also Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) ("the 'policy' requirement is meant to distinguish those injuries for which [the] county is responsible under § 1983, from those injuries for which the county should not be held accountable[]") (citation omitted).

In *Leslie v. Lacy*, 91 F. Supp. 2d 1182, 1194 (S.D. Ohio 2000), the court noted that "[t]he [county] clerks of court operate under the authority of the common pleas courts in their respective counties, not under the authority of their counties or the county commissioners." The Ohio criminal rules and statutes under which complaints are filed and arrest warrants are issued "represent the policy of the state." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Therefore, under those rules and statutes, the county and/or township clerks are acting as agents of the state, not as agents of their respective county or township. Even the prosecuting attorney who allegedly "promulgated, implemented, and presides over" (Compl. ¶ 11) the procedures for issuance of arrest warrants "act[s] as [an] arm[] of the state—not of a municipality—when prosecuting state criminal charges, meaning that their 'actions in prosecuting the charge . . . [may] not be attributed to the [municipality].'" *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Pusey*, 11 F.3d at 659).

The supplemental authority offered by plaintiffs does not alter this analysis. In their supplemental brief, plaintiffs cite *State v. Hoffman*, No. 2013-0688, 2014 WL 5648448, at * 13 (Ohio Nov. 4, 2014), for the proposition that "securing warrants without an affidavit and with clerks incapable of determining probable cause is 'flagrantly unconstitutional.'" *Id.* ¶ 46. Aside

11

from the fact that there is no such statement in ¶ 46 of *Hoffman*,[9] even if there were, this statement of the law does not require a conclusion that these defendants have a policy and/or custom of making arrests without probable cause.

Finally, the Court turns to the *res judicata* argument raised only by the Township Defendants as to all plaintiffs but Graves and Sexton. As argued by the Township Defendants, plaintiffs Montecalvo, Ellis, Wallace, Jackson, Pratt and Narkum filed a motion in the state court to dismiss their criminal actions based on the very same Fourth Amendment claims raised herein. These motions were denied. Similarly, plaintiffs Benner, Montecalvo, Ellis, Wallace, Jackson, Pratt and Narkum filed a complaint for writ of prohibition in the Ohio Supreme Court also raising the same Fourth Amendment claims. This, too, was denied. This Court must give the same effect to those rulings as a state court would. *5455 Clarkins Drive, Inc. v. Poole*, 384 F. App'x 458, 462 (6th Cir. 2010).

> In Ohio, the doctrine of res judicata encompasses the two related concepts of claim preclusion and issue preclusion. *State ex rel. Nickoli v. Erie MetroParks,* 124 Ohio St. 3d 449, 923 N.E. 2d 588, 592 (2010). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action," whereas issue preclusion, or collateral estoppel, "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Ibid.* In Ohio, the doctrine of claim preclusion "applies not only to what was determined but also to every question which might properly have been litigated." *Stromberg v. Bd. of Educ. of Bratenahl,* 64 Ohio St. 2d 98, 413 N.E. 2d 1184, 1186 (1980). This applies both to claims that could have been raised by the plaintiff *and* those that could have been raised by the defendant at the earlier proceeding. *Johnson's Island, Inc. v. Bd. of Twp. Trustees,* 69 Ohio St. 2d 241, 431 N.E. 2d 672, 674-75 (1982).

---

[9] Paragraph 46 states:

> The exclusionary rule is designed to deter police misconduct that flagrantly, deliberately, or recklessly violates the Fourth Amendment. When officers act in good-faith reliance on a warrant that is later determined to be invalid, suppressing that evidence does not serve the purpose of the exclusionary rule. Good-faith reliance can be established when officers adhere to procedures established in binding precedent.

*Id.* The Township Defendants are correct that, as to the plaintiffs who filed a motion to dismiss and/or a complaint in prohibition, *res judicata* bars the § 1983 Fourth Amendment claims before this Court.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Doc. Nos. 140 and 142) are **GRANTED** and this action is dismissed with prejudice.[10]

**IT IS SO ORDERED**.

Dated: January 28, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] As noted in note 8, *supra*, the allegations of the complaint are very nuanced. Without a close reading, one might initially conclude that the generalized allegations are sufficient to allege a constitutional violation and, to the extent they are unclear, would warrant allowing plaintiffs to amend the complaint, rather than dismissing it. But plaintiffs have already filed five complaints (two of which were stricken) and have never alleged in all those complaints that they were arrested without probable cause. Plaintiffs have not moved to further amend their complaint, although the very last sentence of their combined response in opposition to the motions to dismiss asks that the court "deny the motions to dismiss, or in the alternative provide leave to amend to correct any deficiencies." (Pls. Opp'n at 2997.) Rule 15(a) "does not give plaintiffs unbridled authority to amend the complaint[]" *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014), and "[a] district court does not abuse its discretion if it denies a plaintiff permission to amend his complaint without reason when the plaintiff has already amended once and then subsequently fails to file a proper motion justifying another amendment." *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 425 (6th Cir. 2013) (citations omitted). Here, plaintiffs, though having several opportunities to do so, have failed to state a claim for relief against any of these defendants. There is no reason to conclude that further amendment could ever address this fatal deficiency.